HESTER A. WOLF v. LARKIN WASHER AND DAVID WOLF.

1. DEMURRER TO EVIDENCE, *How Considered.* Upon a demurrer to evidence, the court cannot weigh conflicting evidence, but must consider as true every portion of the evidence tending to prove the case of the party resisting the demurrer.

2. DEMURRER TO EVIDENCE, *Sustained—Error.* Therefore, where the principal and controlling question involved in a case is, whether the plaintiff has abandoned her homestead, or not, and the plaintiff's evidence is conflicting and contradictory, but still there is sufficient, if the contradictory evidence were not considered, to prove that the plaintiff has not abandoned her homestead, and the court sustains a demurrer to the plaintiff's evidence, virtually holding that the plaintiff has abandoned her homestead, *held,* error.

*Error from Wyandotte District Court.*

ACTION brought by *Wolf* against *Washer* and another, to set aside a certain deed. Trial by the court at the December Term, 1883. At the close of the plaintiff's evidence, the defendants demurred thereto on the ground that no cause of action is proved in favor of the plaintiff and against the defendants. The court sustained the demurrer, and rendered judgment for the defendants and against the plaintiff for costs. Plaintiff brings the case to this court. The opinion states the facts.

*D. B. Hadley,* for plaintiff in error.

*Alden & McGrew,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of a suit in equity, brought by Hester A. Wolf against Larkin Washer and David Wolf, to set aside a deed of conveyance purporting to have been executed by the said David Wolf and Hester A. Wolf, husband and wife, to Larkin Washer, and conveying to Washer certain real estate situated in Wyandotte county, Kansas, and belonging to David Wolf. It appears that in 1871 David Wolf and Hester A. Wolf, his wife, with their six or seven children, moved upon the land in dispute and occupied the same as their homestead from that time up to September, 1875, when they leased the same to a man named Megley, and removed therefrom to the state of Arkansas, where they resided until September, 1878, when they removed to a place near Westport, Missouri, where they resided until about January 20, 1880, when they executed a deed for the land to Philip Branner. This deed was left in escrow with Nathan Cree, to hold until Branner performed on his part, which was to pay off a judgment of $430 then existing against Wolf and wife, and to convey to David Wolf another piece of land, valued at $1,000. This judgment was rendered upon the foreclosure of a mortgage given by the Wolfs for a part of the

purchase-money for the land in dispute, and was a lien upon such land. Afterward, it was ascertained that Branner could not procure the money to pay said judgment, and the transaction between him and the Wolfs was therefore abandoned. Afterward, Wolf sold the property to Larkin Washer for about $1,000, Washer agreeing to pay off the judgment, with some additional costs, and also to pay $500 in addition thereto; but instead of a new deed being executed from Wolf and wife to Washer, the name of Branner, the original grantee, was erased from the Branner deed, and the name of Washer was inserted therein as the grantee. This was done with the consent of all the parties except Mrs. Wolf. This deed, as thus changed, was recorded on February 16, 1880. About this time, Wolf and wife separated, and they have never lived together since. Neither of them has resided upon the land in dispute since they left it in September, 1875. Mrs. Wolf has continued to reside in the state of Missouri ever since her removal to that State in 1878.

There are some other facts in the case of a material character, which will hereafter be stated. On February 8, 1882, Mrs. Wolf commenced this present action to set aside the foregoing deed to Washer. Afterward, and on December 28, 1883, the case was regularly called for trial, and was tried by the court without a jury, and at the close of the plaintiff's evidence the defendants filed a demurrer thereto, upon the following ground, to wit: "No cause of action is proved in favor of said plaintiff and against said defendants." The court below sustained the demurrer, and rendered judgment in favor of the defendants and against the plaintiff for costs. The plaintiff then moved the court for a new trial, upon various grounds, which motion was overruled by the court. On March 8, 1884, a case was duly settled and signed for the supreme court, and the plaintiff, as plaintiff in error, now brings the case to this court for review.

Did the court below err in sustaining said demurrer? We think it did, and we shall now proceed to state some of the other facts which we think show that the court below did so err.

It is claimed by Mrs. Wolf, (and there was considerable evidence tending to prove the same,) that the Wolfs have never procured any other homestead since they left their homestead in Wyandotte county, Kansas, in September, 1875; that when they left such homestead they were owing, in addition to what has already been stated, the sum of $150 to Larkin Washer; that they could not pay him, and could hardly make a living on their farm; so they rented it for $150 a year, turning the rent over to Washer; that when they left their farm in 1875, they intended to return to it again, unless they found some other place which suited them better; they fixed no time for staying away, but did not intend to stay away any great length of time. They traveled through Missouri and into Arkansas, looking at the country, but found no place that satisfied them as well as their own farm in Wyandotte county, Kansas, and after residing in Arkansas until September, 1878, they again returned to their farm in Wyandotte county, with the intention of occupying the same as they had previously done; but on returning to it, they found it occupied by a tenant, who would not deliver it back to them until his lease expired, which was the next spring afterward. They then removed to a place near Westport, Missouri, a few miles from their farm, where they concluded to reside until they could get their farm. When the next spring came, Mr. Wolf, without the consent of his wife and against her wishes, again leased the farm for another year, and they continued to reside near Westport, Missouri, within a few miles of their farm, until January, 1880, when the Branner deed was executed. When Mrs. Wolf consented to sell or trade their land to Branner, she did so only upon the condition that Branner should convey to them the aforementioned piece of land belonging to him, which they intended to occupy and use as their homestead. She never consented to sell or trade their land to Washer; never had any contract with him; never agreed to so change the Branner deed as to make it a deed to Washer; and, indeed, never consented to sell, or trade, or abandon her homestead except upon the condition that another homestead

should be procured at the same time; and because she would not consent to transfer their land to Washer, her husband left her in February, 1880, and has never lived with her since. Some of the evidence tends to prove all this; but the evidence was conflicting and contradictory, and perhaps the preponderance of the evidence would tend to prove that Mrs. Wolf, as well as her husband, did abandon their land as a homestead.

We think, however, that there was sufficient evidence on the part of Mrs. Wolf, if it were not contradicted by any other evidence—or rather, if the contradictory evidence were not considered—to show that she has never abandoned their land as a homestead, and has never consented, except upon the condition aforementioned, that it should be alienated from her. And if such of her evidence is true, and may be relied on, then the decision of the court below was erroneous. It has already been settled by this court, that upon a demurrer to evidence the court cannot weigh conflicting evidence, but must consider as true every portion of the evidence tending to prove the case of the party resisting the demurrer. (*Bequillard v. Bartlett*, 19 Kas. 382; *Brown, Adm'r, v. A. T. & S. F. Rld. Co.*, 31 id. 1.) In order to sustain a demurrer to the evidence, the court must be able to say, as a matter of law, that the party introducing the evidence has not proved his case; and the court cannot, upon conflicting and contradictory evidence, say that as a matter of fact the preponderance of the evidence shows that the party introducing it has not proved his case. If in the present case no demurrer to the evidence had been interposed, and the case had been submitted to the court upon the evidence introduced, for a decision upon the merits and as to what the conflicting and contradictory evidence in fact proved, and the court had decided the case in favor of the defendants and against the plaintiff, the decision in all probability would be right; for in such a case the court would have weighed the conflicting and contradictory evidence, and would have decided the case upon the preponderance of the evidence; but the court cannot do such a thing where a demurrer to the evidence is

interposed, and where the court decides the case as a question of law upon the demurrer.

Whether the plaintiff will ever be able to recover in this case, or not, we cannot tell; but in anticipation that she may possibly recover, it will be well for the defendant Washer to so amend his pleadings that he can have a judgment rendered that the property in dispute shall be sold at judicial sale to satisfy the judgment heretofore rendered on the mortgage, and which he has paid.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.