No. 28,792.

J. A. CURRY, *Appellant*, v. THE WICHITA RAILROAD AND LIGHT
COMPANY, *Appellee.*

(278 Pac. 749.)

Opinion filed July 6, 1929.

*L. P. Brooks, Lewis A. Hasty* and *James B. Nash,* all of Wichita, for the appellant.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris* and *George B. Powers,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action to recover damages for personal injuries and for injuries to an automobile growing out of a collision between an automobile and a street car. The jury rendered a verdict for the plaintiff and answered a number of special questions. The court sustained the motion of the defendant street-car company for judgment notwithstanding the verdict, and the plaintiff appeals.

The collision is described in the briefs to have occurred about two o'clock in the afternoon of November 18, 1927, at the intersection of Lewis street and South Main street in the city of Wichita. The street car was moving north on Main street and plaintiff was driving east on Lewis street.

The only question to be determined in the case is the correctness of the trial court's ruling in sustaining the motion of the defendant

for judgment on the special findings. Under such circumstances we will not be concerned as to the evidence, but will accept the findings as being fully supported by the evidence.

"A motion for judgment on the special findings, notwithstanding the general verdict, concedes, for the purpose of the motion, that the findings are sustained by the evidence." (*Commerce Trust Co. v. Pioneer Cattle Loan Co.*, 120 Kan. 712, syl. ¶ 2, 244 Pac. 840.)

The jury rendered the following verdict and answers to special questions:

"We, the jury, impaneled and sworn in the above-entitled case, do upon our oath find for the plaintiff, J. A. Curry, and against the defendant, Wichita Railroad and Light Company, and assess the amount of plaintiff's recovery at $500.

"1. Did the plaintiff look for approaching street cars prior to entering the intersection? A. Yes.

"2. If you answer the preceding question in the affirmative, state the location of the plaintiff when he looked. A. Entering of intersection.

"3. After the plaintiff had entered the intersection did he look for approaching street cars? A. No.

"4. If you answer the preceding question in the affirmative, then state whether or not plaintiff saw an approaching street car. A. No.

"5. If you answer the preceding question in the negative, then state what prevented the plaintiff from seeing an approaching street car. A. Didn't have time.

"6. What negligence do you find as against the defendant company? A. Driving too fast; didn't use his brakes.

"7. Was the manner in which the automobile was driven the proximate cause of the collision? A. No.

"8. What amount do you allow the plaintiff for (a) personal injuries? A. $240. (b) Damage to automobile? A. $260.

"9. How fast was the plaintiff traveling immediately prior to the collision? A. Twelve miles.

"10. In what distance could the plaintiff have stopped his automobile driven at the rate of speed found by you in the preceding question? A. Twenty feet."

It is quite apparent from the reading of the answers, as well as the arguments of counsel, that the answers to questions 3, 4 and 5 were regarded as the basis for the ruling of the trial court that the plaintiff should not recover because of contributory negligence. In this connection the reviewing court is very properly reminded by the appellant of the general rule that the answers to special questions should never control or supersede the general verdict unless the inconsistency compels such result (*Tarin v. Railway Co.*, 98 Kan. 605, 158 Pac. 874); that slight inconsistencies in the special findings do

not necessarily require the overthrow of the general verdict (*Brown v. Utilities Co.*, 110 Kan. 283, 203 Pac. 907) ; that the general verdict and special findings should be harmonized, if possible, and every presumption should be indulged in favor of the general verdict (*Moore v. Connelly*, 119 Kan. 35, 237 Pac. 900) ; and that a motion for judgment on such findings should not be sustained unless the findings are so out of harmony with the general verdict that the latter cannot stand (*Smith v. Tri-County Light and Power Co.*, 120 Kan. 123, 241 Pac. 1090; *Commerce Trust Co. v. Pioneer Cattle Loan Co.*, supra; *Lesher v. Carbon Coal Co.*, 127 Kan. 34, 272 Pac. 155).

Will, then, the facts that the plaintiff did not look for approaching street cars after entering the intersection, did not see an approaching street car, and was prevented from seeing it because he didn't have time, constitute contributory negligence, and are these facts hopelessly inconsistent with the general verdict? One other finding, No. 9, can very properly be considered in connection with that of No. 5; that is, plaintiff was traveling at the rate of twelve miles per hour immediately prior to the collision. He would have had more time to look for an approaching street car if he had been traveling at a lesser rate of speed. The speed with which he approached the street-car track was undoubtedly of his own regulation. Is it not negligence for any one to approach a street-car track, which is known and held to be a place of danger, at such a rate of speed as will not afford him time to look for an approaching street car on such track? He did not look after entering the intersection because he didn't have time to look, at the rate of speed he was going. Will the fact that he looked before he entered the intersection relieve him of the duty of looking again?

"When a person driving an automobile comes to a street crossing on which there is a street railway line, and sees a street car coming a short distance away, and she proceeds to drive her automobile across the railway track without paying attention to the approaching street car, where if at any time after she entered the street intersection she had looked she would have seen that a collision was inevitable unless she applied her brakes and stopped her car, and where she had sufficient time and distance in which to stop it in safety but failed to do so, she was guilty of contributory negligence which barred a recovery against the street-car company notwithstanding the general verdict and other findings of the jury." (*Gardner v. Topeka Rly. Co.*, 123 Kan. 262, syl. ¶ 2, 255 Pac. 83.)

It has been held that neither speed nor other things diverting a

driver's attention will excuse him from the duty of looking for approaching cars.

"Where a pedestrian undertakes to cross a street upon which are two street-car tracks, and while on the second one is struck by a street car which it required sixty feet to stop and which just as he stepped upon the second track was thirty feet away, coming at the rate of twenty miles an hour, his failure to look for an approaching car constitutes, as a matter of law, such contributory negligence as to preclude a recovery on his account against the railway company. This conclusion is not affected by the fact that his attention was drawn to a car approaching from the opposite direction on the other track." (*Ogden v. Wilson,* 120 Kan. 269, syl. ¶ 1, 243 Pac. 284.)

This case, very different from the case of *Morris v. Kansas City, L. & W. Rly. Co.,* 118 Kan. 433, 235 Pac. 1047, shows that the rate of speed at which the plaintiff was driving did prevent him from having the opportunity of looking for the approaching car because he "didn't have time" to look, and in that way it contributed to the injury.

It has for a long time been thoroughly recognized that a street-car track is a warning of danger, and the purpose of looking is to avoid the danger. The time to look is while the result of the observation may be helpful in avoiding collision.

"That a street-car track is a warning of danger, that each track where there are more than one is a warning, that a car may be expected at any time, and that a pedestrian must look and listen before attempting to cross, has been said so many times that a reference to the decided cases is not necessary. The purpose of looking for an oncoming car is to avoid the danger incident to getting in front of it or so near to it as to cause a collision. The time to do this is while the result of observation may be utilized, and means and opportunity still exist to avoid a collision. The place to do this is necessarily a place far enough removed from the path of the car that it cannot strike while the observation is being made. If necessary, prudent and careful means besides looking and listening must be employed to ascertain whether or not a car is coming." (*Galloway v. Interurban Railway Co.,* 97 Kan. 110, 115, 154 Pac. 238.)

We concur with the trial court in holding that the answers to the special questions compel the conclusion that the appellant was guilty of contributory negligence; that the special findings are hopelessly inconsistent with the general verdict, and therefore the general verdict cannot stand.

The judgment is affirmed.